## No. 22-4029

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

————————————

### TERRY LARSON,
*Plaintiff-Appellant,*

**v.**

### LaSHANN EPPINGER, ET AL.,
*Defendant-Appellees.*

————————————

On Appeal from a Judgment of the United States District Court
for the Southern District of Ohio, No. 2:20-cv-4997 (Sargus, J.)

————————————

### APPELLANT'S OPENING BRIEF

————————————

Oren N. Nimni
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue, N.W.
Unit 26152
Washington, DC 20001

Rohiniyurie Tashima*
Andrew Kim
Jaime A. Santos
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
(202) 346-4000

*Admitted only in New York and Virginia;
not admitted in the District of Columbia.
Practicing under the supervision of counsel
admitted in the District of Columbia.*

March 29, 2023                    *Counsel for Appellant*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 22-4029                    Case Name: Terry Larson v. LaShann Eppinger

Name of counsel: Rohiniyurie Tashima, Andrew Kim, Jaime Santos, Oren Nimni, Sam Weiss

Pursuant to 6th Cir. R. 26.1, Terry Larson
                                                      *Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
    identity of the parent corporation or affiliate and the relationship between it and the named
    party:

> No

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
    in the outcome?  If yes, list the identity of such corporation and the nature of the financial
    interest:

> No

CERTIFICATE OF SERVICE

I certify that on _____ March 29, 2023 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Rohiniyurie Tashima
Rohiniyurie Tashima

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................... 1

Request for Oral Argument ............................................................ 3

Jurisdictional Statement ............................................................... 3

Statement of the Issues ................................................................. 4

Statement of the Case ................................................................... 4

    I.   Due to a botched surgery, Mr. Larson has a severe medical condition that has left him incontinent and that triggers a painful bowel movement more than a dozen times a day ............ 4

    II.  After a decade of providing Mr. Larson with a single-man cell, Defendants revoke that accommodation ............................. 6

    III.  The district court twice concludes that Mr. Larson adequately pleaded an ADA and Rehabilitation Act claim, then reverses course without explanation. ................................ 10

Summary of Argument .................................................................. 14

Standard of Review ...................................................................... 17

Argument ..................................................................................... 18

    I.   Mr. Larson plausibly alleged that Defendants' refusal to provide him with the reasonable accommodation of a single-man cell denied him meaningful access to a toilet under the ADA. ................................................................................... 20

        A.  Mr. Larson has a disability because the complications from surgery have substantially limited the functioning of his excretory system ........................................................ 23

        B.  Mr. Larson is otherwise qualified to take part in the prison's services, programs, or activities ............................ 24

        C.  Defendants' revocation of and refusal to reinstate Mr. Larson's single-man cell accommodation has denied Mr. Larson meaningful access to a toilet by reason of his disability ............................................................................. 26

    D.   Mr. Larson's proposed accommodation is objectively reasonable. ............................................................... 36

II.  The analysis applicable to Mr. Larson's ADA claim likewise applies to his claim under the Rehabilitation Act. .................... 40

Conclusion ........................................................................... 43

Certificate of Compliance ..................................................... 44

Certificate of Service ........................................................... 45

Addendum ........................................................................... 46

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ability Ctr. of Greater Toledo v. City of Sandusky*,
　　385 F.3d 901 (6th Cir. 2004) ................................. 18, 20, 21, 32, 33, 40

*Alexander v. Choate*,
　　469 U.S. 287 (1985) .................................................................... 33, 40

*Anderson v. City of Blue Ash*,
　　798 F.3d 338 (6th Cir. 2015) ........................................................ 37, 39

*Armstrong v. Schwarzenegger*,
　　622 F.3d 1058 (9th Cir. 2010) ............................................................ 25

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009) .......................................................................... 35

*Cahoo v. SAS Analytics Inc.*,
　　912 F.3d 887 (6th Cir. 2019) .............................................................. 17

*Carpenter-Baker v. Ohio Dep't of Medicaid*,
　　752 F. App'x 215 (6th Cir. 2018) ........................................................ 40

*Carten v. Kent State Univ.*,
　　282 F.3d 391 (6th Cir. 2002) .............................................................. 42

*Courtright v. City of Battle Creek*,
　　839 F.3d 513 (6th Cir. 2016) .............................................................. 17

*Cutter v. Wilkinson*,
　　423 F.3d 579 (6th Cir. 2005) .............................................................. 41

*Cutter v. Wilkinson*,
　　544 U.S. 709 (2005) .......................................................................... 41

*Davis v. Prison Health Servs.*,
　　679 F.3d 433 (6th Cir. 2012) .............................................................. 17

iii

*Douglas v. Muzzin*,
  No. 21-2801, 2022 WL 3088240 (6th Cir. Aug. 3, 2022) .................. 22

*Furgess v. Pa. Dep't of Corr.*,
  933 F.3d 285 (3d Cir. 2019) .............................................. 25

*G.C. v. Owensboro Pub. Schs.*,
  711 F.3d 623 (6th Cir. 2013) ............................................. 19

*Gohl v. Livonia Pub. Schs. Sch. Dist.*,
  836 F.3d 672 (6th Cir. 2016) ............................................. 19

*Hindel v. Husted*,
  875 F.3d 344 (6th Cir. 2017) ......................................... 37, 39

*Johnson v. City of Saline*,
  151 F.3d 564 (6th Cir. 1998) ............................................. 24

*Keller v. Chippewa Cnty. Bd. of Comm'rs*,
  860 F. App'x 381 (6th Cir. 2021) .......................... 15, 21, 22, 24, 26, 27

*Key v. Grayson*,
  179 F.3d 996 (6th Cir. 1999) ............................................. 19

*Knox Cnty. v. M.Q.*,
  --- F.4th ---, 2023 WL 2552843 (6th Cir. 2023) ........................ 21, 22

*Madej v. Maiden*,
  951 F.3d 364 (6th Cir. 2020) ......................................... 20, 21

*Marble v. Tennessee*,
  767 F. App'x 647 (6th Cir. 2019) ......................................... 37

*Martin v. Overton*,
  391 F.3d 710 (6th Cir. 2004) ............................................. 18

*Mingus v. Butler*,
  591 F.3d 474 (6th Cir. 2010) ............................................. 18

*Monette v. Elec. Data Sys. Corp.*,
  90 F.3d 1173 (6th Cir. 1996) ............................................. 40

iv

*Pa. Dep't of Corr. v. Yeskey,*
    524 U.S. 206 (1998) ...................................................................... 18, 24

*PGA Tour, Inc. v. Martin,*
    532 U.S. 661 (2001) ............................................................................ 37

*Roell v. Hamilton Cnty.,*
    870 F.3d 471 (6th Cir. 2017) .............................................................. 21

*Shaw v. Kemper,*
    52 F.4th 331 (7th Cir. 2022) .............................................................. 24

*Starr v. Bland,*
    No. 21-2476, 2022 WL 711304 (8th Cir. Mar. 10, 2022) ................... 25

*Tennessee v. Lane,*
    541 U.S. 509 (2004) ............................................................................ 26

*United States v. Georgia,*
    546 U.S. 151 (2006) ...................................................................... 24, 27

*Waskul v. Washtenaw Cnty. Cmty. Mental Health,*
    979 F.3d 426 (6th Cir. 2020) ............................................. 15, 18, 40, 42

*Williams v. Curtin,*
    631 F.3d 380 (6th Cir. 2011) ................................................. 18, 32, 36

*Wilson v. Gregory,*
    3 F.4th 844 (6th Cir. 2021) ................................................................ 21

*Wright v. N.Y. State Dep't of Corr.,*
    831 F.3d 64 (2d Cir. 2016) ................................................................. 26

**Statutes:**

28 U.S.C. § 1291 ........................................................................................ 4

28 U.S.C. § 1331 ........................................................................................ 3

28 U.S.C. § 1915A .......................................................................... 11, 13, 17

29 U.S.C. § 701. ......................................................................................... 3

29 U.S.C. § 794(a) ............................................................ 19, 40, 41

42 U.S.C. § 12101 ....................................................................... 3

42 U.S.C. § 12102(1)(A) ......................................................... 23

42 U.S.C. § 12102(2)(B) ......................................................... 23

42 U.S.C. § 12131(2) ............................................................... 24

42 U.S.C. § 12132 ...................................................... 18, 22, 27, 40

**Regulations:**

28 C.F.R. pt. 35, App. A............................................................ 25

28 C.F.R. § 35.108(d)(1)(i) ..................................................... 23

28 C.F.R. § 35.108(d)(1)(v) ..................................................... 23

28 C.F.R. § 35.130(a) ............................................................... 21

28 C.F.R. § 35.130(b)(7)(i) .............................................. 20, 37

**Other Authorities:**

Ohio Checkbook, *Expenses by Agency*, https://check
    book.ohio.gov/State/Expenses/Agency.aspx ........................ 41

Ohio Dep't of Rehab. & Corr., Policy No. 55-SPC-01 (Apr. 1,
    2021), bit.ly/3TcaOet............................................................ 38

## INTRODUCTION

About fifteen years ago, Terry Larson was diagnosed with colon cancer. At the direction of prison medical officials, he underwent surgery to treat his cancer, but the surgery was botched. It left him with a severe medical condition that requires constant use of (and access to) bathroom facilities: Mr. Larson has between twelve and more than twenty bowel movements per day. Moreover, the botched surgery left him incontinent, making it almost impossible for Mr. Larson to prevent himself from defecating. Mr. Larson's symptoms also include bloody stool, diarrhea, discomfort, rectal itching and burning, and uncontrollable flatulence. There is no fix for the surgery-gone-wrong: he will live with this condition for the rest of his life.

As a result, for more than ten years, prison officials provided Mr. Larson with an accommodation that was initially ordered by his doctor, one that allowed Mr. Larson to live his life with the necessary access to bathroom facilities and with some semblance of dignity—a single-man cell with his own toilet. This accommodation allowed Mr. Larson to relieve himself immediately during uncontrollable bowel movements. But in 2018, Defendants revoked this longstanding accommodation and

refused to reinstate it, despite Mr. Larson's repeated requests.  Instead, prison officials provided Mr. Larson with a shared cell—an arrangement that is ripe for conflict due to Mr. Larson's constant need for the toilet— and access to a restroom designated for disabled prisoners, but in fact used by all comers.  Mr. Larson now finds himself without meaningful access to a toilet—*i.e.*, access that meaningfully accommodates his condition.

Initially, the district court concluded that Mr. Larson adequately alleged a claim under the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973—twice.  But after Mr. Larson amended his complaint to add additional facts—without changing any of the previous allegations material to his ADA and Rehabilitation Act claims—the district court pulled an about-face, and decided that Mr. Larson no longer plausibly alleged Defendants denied him a reasonable accommodation. The court based its reversal on a mistaken legal premise:  it wanted Mr. Larson to allege a lack of actual access to a toilet, rather than meaningful access—but the ADA and Rehabilitation Act require the latter, not the former.  Compounding the district court's error was its failure to liberally

construe Mr. Larson's pro se complaint (and outright oversight of some key factual allegations).  The court's decision should be reversed.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a), Plaintiff-Appellant Terry Larson respectfully requests that the Court permit oral argument.  This case presents complex legal questions concerning the contours of disability law and the scope of meaningful access and reasonable accommodations under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, in particular.  Oral argument would allow counsel to address the legal issues presented in this case and respond to the Court's inquiries.

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331 because this case arises under two federal statutes, the ADA, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. The district court dismissed all of Mr. Larson's claims on October 20, 2022.  RE 32, Op. & Order, PageID 326.  Mr. Larson filed a motion to reconsider on November 3, 2022, RE 36, Mot. to Reconsider, PageID 339-

44, which the district court denied on November 8, 2022, RE 37, Op. &
Order, PageID 346-48.  Mr. Larson timely appealed from this decision on
December 6, 2022.  RE 38, Notice of Appeal, PageID 349-50.  The district
court's order of dismissal was a final order, and this Court accordingly
has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether Mr. Larson's amended complaint stated a claim for
relief that Defendants violated Title II of the ADA and the Rehabilitation
Act by taking away his single-man cell accommodation and denying him
meaningful access to a toilet.

## STATEMENT OF THE CASE

**I.      Due to a botched surgery, Mr. Larson has a severe medical
condition that has left him incontinent and that triggers a
painful bowel movement more than a dozen times a day.**

Mr. Larson is currently incarcerated at Grafton Correctional
Institution in Ohio.  RE 26, Am. Compl., PageID 246.  In 2007, he was
diagnosed with colorectal cancer and underwent surgery to remove
portions of his colon and his lymph nodes.   RE 26, PageID 248-49.
Complications from this procedure "irreparabl[y]" narrowed parts of Mr.
Larson's intestines, causing him to suffer from "multiple (12, 15, or 20

4

plus) daily bowel movements, uncontrollable flatulence, … blood, soreness, leakage and strenuous [bowel movements]," and incontinence. RE 26, PageID 250-51; RE 26, PageID 261 (describing "symptoms of stenosis, frequent [bowel movements] that include strenuous and painful [bowel movements] at times, rectal itching and burning, discomfort, incontinence, stool leakage, [and] flatulence"). Because of his condition, it is "all but impossible [for Mr. Larson] to hold back [bowel movements]," RE 26, PageID 251, "when the need to defecate hits him the majority of the time," RE 26, PageID 261. Indeed, while Mr. Larson was under medical observation in April 2019, the prison infirmary gave him diapers so that he did not have to continue using soiled undergarments. RE 26, PageID 260. Mr. Larson's "system" also periodically "flushes completely out" in a process that "begins with stomach cramps," followed by successive bowel movements of varying sizes before ultimately ending with diarrhea. RE 26, PageID 251. To cope with his incontinence and other symptoms, Mr. Larson purchases items from the commissary, such as creams, that allow him to manage his pain and clean up after bowel movements. RE 26, PageID 252. Mr. Larson will suffer these symptoms "for the rest of his life." RE 26, PageID 251.

Given Mr. Larson's severe symptoms, his doctors ordered soon after his surgery that he have a private restroom. RE 26, PageID 249. Because of his frequent bowel movements, incontinence, and conflicts with cellmates over his restroom usage, Mr. Larson filed a reasonable accommodation request for a single-man cell under the ADA in 2008. RE 26, PageID 249. However, an ADA coordinator recommended that Mr. Larson's request be denied because his condition was "medical and not ADA," a recommendation that the warden subsequently adopted. RE 26, PageID 249. Mr. Larson successfully appealed this decision, and he was placed in a single-man cell. RE 26, PageID 250.

## II. After a decade of providing Mr. Larson with a single-man cell, Defendants revoke that accommodation.

Mr. Larson was given the accommodation of a single-man cell for more than ten years. RE 26, PageID 252. But in 2018, the prison's health care administrator announced that "all" single-man cell accommodations were "being discontinued," RE 26, PageID 253, with other members of staff separately informing Mr. Larson that "all [single-man cells] are being rescinded" and that people previously in those cells would be "doubled up," RE 26, PageID 254; *see also* RE 26, PageID 259 (health care

6

administrator informing Mr. Larson that the warden "discontinued [his] ADA [single-man cell] for bed space per Columbus").

Despite these statements indicating a blanket policy rescinding single-man cell accommodations, the chief medical officer, nurse, ADA coordinator, and warden also claimed that a single-man cell was "not medically necessary" for Mr. Larson.  RE 26, PageID 254.  After Mr. Larson objected and requested that his single-man cell accommodation be reinstated, RE 26, PageID 254-257, the warden notified him that the ADA committee had determined that a single-man cell was not medically necessary but that Mr. Larson would have access instead to the restroom designated for disabled prisoners within his unit, RE 26, PageID 256. Although Mr. Larson appealed this decision, his appeal was "returned" because it did not have a reasonable accommodation form attached to it. RE 26, PageID 258.

In January 2019, a health care administrator instructed Mr. Larson to fill out the reasonable accommodation form as a "formality" so that Mr. Larson could appeal when it was denied.  RE 26, PageID 259.  After receiving advice from an attorney, Mr. Larson filed a reasonable accommodation request in May 2019.  RE 26, PageID 261.  His request

for a single-man cell was denied, but Mr. Larson was approved for continued assignment to a cell and continued use of the restroom designated for disabled prisoners. RE 26, PageID 261. Mr. Larson appealed this decision, and his appeal was denied in December 2019. RE 26, PageID 280.

The prison also began limiting the number of toilet paper rolls allocated to each individual in March 2021. RE 26, PageID 264. Because Mr. Larson's frequent bowel movements meant that the allocated number of rolls was inadequate, he filed a reasonable accommodation request for additional rolls. RE 26, PageID 264. The ADA coordinator approved his request and, after hearing that Mr. Larson did not have a single-man cell, instructed him to file a new request for the single-man-cell accommodation. RE 26, PageID 264. Accordingly, in September 2021, Mr. Larson filed another reasonable accommodation request for a single-man cell. RE 26, PageID 265. After prison officials misplaced it, he resubmitted his request the following month. RE 26, PageID 265. But his request was denied in January 2022 "because Grafton Correctional Institution does not have the authority to change the institutional bed count." RE 26, PageID 265.

In February 2019, Mr. Larson began sharing his cell with another inmate for the first time in more than ten years. RE 26, PageID 260. He tried to lower the frequency of his bowel movements (and the need to access a toilet) by skipping meals, as part of his efforts to accommodate his cellmate's bathroom schedule. RE 26, PageID 252.

Although Mr. Larson is authorized to use the restroom designated for disabled prisoners, that restroom "is not readily available for use" because Mr. Larson must wait for a correctional officer to unlock it, which sometimes can take up to twenty minutes. RE 26, PageID 263. Additionally, when the door to the restroom is left unlocked, everyone in Mr. Larson's unit, including people without disabilities, can access and use the specially designated restroom. RE 26, PageID 263. Indeed, after Mr. Larson was moved to a new unit in November 2021, the people in his new unit used the specially designated restroom without authorization and even washed their dishes in that restroom. RE 26, PageID 265. This practice was so well established that the restroom even had an "inmate writ[t]en" sign asking people to "clean up after your [sic] done with bowls and dishes. If you don't[,] we will lose the [privilege] of using this restroom." RE 26, PageID 265. After Mr. Larson brought this sign to the

warden's attention, the sign was removed and replaced with a sign from the unit manager with a similar message.  RE 26, PageID 266.  Although the sign was later changed to indicate that only people with disabilities could use the restroom, the restroom remained a "community restroom" that anyone could use and was unlocked the majority of the time.  RE 26, PageID 266.  Moreover, even when the restroom designated for disabled prisoners is unoccupied, Mr. Larson cannot access it at night or when he is locked in his cell.  RE 26, PageID 263.

## III. The district court twice concludes that Mr. Larson adequately pleaded an ADA and Rehabilitation Act claim, then reverses course without explanation.

Because prison officials refused to restore Mr. Larson's single-man cell accommodation, Mr. Larson, proceeding pro se, filed this action in the Southern District of Ohio in September 2020.  RE 1, Compl., PageID 1.  In his initial complaint, Mr. Larson alleged that he suffers from frequent bowel movements, stomach cramps, incontinence, and other symptoms that require that he have "frequent, undelayed" access to a toilet.  RE 1, PageID 5-8.  He likewise explained how Defendants revoked his single-man cell accommodation and how he has since sought to have it reinstated.  RE 1, PageID 8-21.  In addition to his claims under the

ADA and Rehabilitation Act, Mr. Larson raised claims under the First, Eighth, and Fourteenth Amendments.  RE 1, PageID 21-24.

The magistrate judge issued a screening order under 28 U.S.C. § 1915A, recommending that Mr. Larson's complaint be dismissed in its entirety for failure to state a claim upon which relief may be granted.  RE 4, Report & Recommendation, PageID 72-84.  Mr. Larson timely objected. RE 5, Objs. to Report & Recommendation, PageID 85-94.  Although the district court agreed with the magistrate judge that Mr. Larson's constitutional claims should be dismissed, the court disagreed with respect to his ADA and Rehabilitation Act claims, concluding that Mr. Larson "sufficiently states a plausible claim for failure to provide a 'reasonable modification' under Title II of the ADA and the [Rehabilitation Act]."  RE 6, Op. & Order, PageID 96, 110.

Despite this conclusion, Defendants and the State of Ohio[1] moved to dismiss the same claims for failure to state a claim.  RE 9, Mot. to

---

[1] Because David Hannah, the former health care administrator, was no longer employed by the State, the district court dismissed all claims against him in its screening order.  RE 6, PageID 111-12.  At the time of the remaining defendants' motion to dismiss, Defendant LaShann Eppinger, the former warden, had not been served, so the State of Ohio acted on Eppinger's behalf in moving to dismiss the complaint.  RE 9, Mot. to Dismiss, PageID 151.

Dismiss, PageID 151-60.  In that motion, Defendants conceded that Mr. Larson has a disability and would otherwise be qualified to use a toilet. RE 9, PageID 156.  Defendants argued, however, that Mr. Larson was not denied a single-man cell because of his disability, such that there was no purposeful discrimination.  RE 9, PageID 157.

The district court concluded for the second time that Mr. Larson stated claims for relief under the ADA and Rehabilitation Act.  RE 19, Op. & Order, PageID 200-06.  The court explained that it had "explicitly found in its [prior] Opinion that [Mr. Larson] has sufficiently alleged that he was denied an accommodation because of his disability" and accordingly denied Defendants' motion.  RE 19, PageID 205-06.

Mr. Larson, still proceeding pro se, subsequently amended his complaint.  RE 26, PageID 245.  The amended complaint contained factual allegations about Mr. Larson's disability, his previous single-man cell accommodation, and Defendants' revocation of that accommodation, which were identical to those in the original complaint.  *Compare* RE 1, PageID 4-21, *with* RE 26, PageID 248-64.  Because almost two years had passed since he filed the original complaint, Mr. Larson also updated the factual allegations to include more recent events, such as his transfer to

a different cell unit, his additional request for a single-man cell accommodation, and how inmates in his new unit were free to use the restroom designated for disabled prisoners to wash their dishes. *See* RE 26, PageID 264-66. Indeed, the only substantive change[2] to the amended complaint was Mr. Larson's decision to remove the constitutional claims the court had previously dismissed. RE 26, PageID 245.

The district court screened Mr. Larson's amended complaint under 28 U.S.C. § 1915A and decided that the same factual allegations it had twice concluded stated plausible claims for relief, RE 6, PageID 107-10; RE 19, PageID 206, were somehow no longer sufficient to allege that Defendants failed to provide Mr. Larson with a reasonable accommodation, RE 32, PageID 319, 325. In reviewing Mr. Larson's initial complaint, the court concluded that Mr. Larson "sufficiently

---

[2] Given the changes in personnel at Grafton Correctional Institution, Mr. Larson also updated the defendants in the case. Defendants are: Keith Foley, the warden; M. O'Callahan, the health care administrator; Janice Douglas, the chief medical officer; Jennifer Barry, the assistant ADA coordinator; Kai Adams, the ADA coordinator and institutional inspector; Andrew Eddy, the director of the Ohio Department of Rehabilitation and Corrections' Collegial Review Committee; Roger Wilson, the Ohio Department of Rehabilitation and Corrections' chief inspector, ADA coordinator, and chair of the Special Needs Assessment Committee; and Karen Stanforth, the assistant medical inspector. RE 26, PageID 246-47.

alleged that he was denied a modification the prison once deemed necessary." RE 6, PageID 109. The court even noted that "the handicapped restroom is not readily available for [Mr. Larson] to relieve himself when experiencing uncontrollable bowel movements" and that access to the restroom designated for disabled prisoners "is ineffective because he cannot access a toilet when needed—the very purpose of providing [Mr. Larson] an accommodation." RE 6, PageID 109. But in dismissing Mr. Larson's amended complaint, the district court reversed course, somehow reasoning that Mr. Larson had "not alleged that he has been denied access to a toilet due to Defendants' failure to provide him with [a single-man cell]" and even stating that Mr. Larson did not "allege that he is incontinent." RE 32, PageID 325. The court subsequently dismissed Mr. Larson's amended complaint for failure to state a claim and entered judgment for Defendants. RE 32, PageID 326.

## SUMMARY OF ARGUMENT

There was no reason for the district court to reverse course: Mr. Larson's amended complaint pleads all of the necessary elements of a Title II failure-to-accommodate claim, just like his original complaint. He has plausibly alleged that (1) he is disabled, (2) he is otherwise qualified

to access a toilet, and (3) Defendants' revocation of his single-man cell accommodation has denied him the benefits of meaningful access to a toilet. *See Keller v. Chippewa Cnty. Bd. of Comm'rs*, 860 F. App'x 381, 385-86 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 761 (2022); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 459 (6th Cir. 2020). There can be no debate about whether Mr. Larson adequately alleged a disability, or whether bathroom facilities are "services" of a prison facility that Mr. Larson is "otherwise qualified" to use. The district court's error lies in the third step. It held that Mr. Larson failed to state a claim essentially because he pleaded that he had actual access to a toilet. But the ADA and Rehabilitation Act do not require just access—they require *meaningful* access.

The amended complaint plainly alleges that Mr. Larson has been deprived of meaningful access to a toilet and, ultimately, a requested reasonable accommodation for his disability. For Mr. Larson, meaningful access means immediate access; unlike other prisoners who do not have his disability, he cannot simply wait for a toilet to open up.

And Mr. Larson's amended complaint more than adequately explains why Mr. Larson's current arrangements—a toilet shared with

his frequently rotating cast of cellmates and a restroom designated for disabled prisoners that has been effectively repurposed to a combination bathroom and dishwashing station—are not reasonable accommodations and fail to provide the meaningful access he needs. The toilet he shares with his cellmate does not provide meaningful access—it is not always available when he needs it. Even when the shared toilet is available, Mr. Larson has to go without food to avoid irritating his bowels, so that his bowel movements do not irritate his cellmate in turn. The restroom designated for disabled prisoners does not provide meaningful access to a toilet, either. The restroom is often used by other prisoners (even those without disabilities), either for bodily functions or for dishwashing. When the restroom is not occupied, it may be locked and may take up to twenty minutes to unlock—at which point, it is too late for Mr. Larson, whose need to use a toilet is immediate.

The only reasonable accommodation is the one that Mr. Larson had access to for more than a decade—one that was originally prescribed by his treating physicians, and one that Mr. Larson seeks the restoration of now. As alleged by Mr. Larson, it is the only accommodation that can

adequately provide him with the access to basic sanitation that he needs for his disability.

The district court should have reached the conclusion it reached twice before:  Mr. Larson adequately pleaded a failure-to-accommodate claim under the ADA and the Rehabilitation Act.  Because the court failed to do so, and because its failure was predicated on a faulty legal premise, its order dismissing Mr. Larson's claims should be reversed.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal of a complaint under 28 U.S.C. § 1915A.  *Davis v. Prison Health Servs.*, 679 F.3d 433, 437 (6th Cir. 2012).  In doing so, this Court applies the "same standard" that it "uses to evaluate dismissals under Federal Rule of Civil Procedure 12(b)(6)," *id.*, and must accordingly "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff," *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019) (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).  "*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should

therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)) (internal quotation marks omitted).

## ARGUMENT

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To comply with the ADA, public entities must "make reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of the services such entities provide." *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004). And this requirement "unambiguously extends to state prison inmates." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998); *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) ("The ADA applies to both federal and state prisons."). The same holds true for the Rehabilitation Act, which mirrors the ADA and "is interpreted in parallel with it." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 459 (6th

Cir. 2020); *see also* 29 U.S.C. § 794(a); *Key v. Grayson*, 179 F.3d 996, 997 (6th Cir. 1999) (Rehabilitation Act applies to prisoners).

To establish a prima facie case of discrimination under Title II of the ADA or the Rehabilitation Act, a plaintiff must show "that he (1) is disabled under the statutes, (2) is 'otherwise qualified' for participation in [a state or local government] program, and (3) 'is being excluded from participation in, denied the benefits of, or subjected to discrimination' because of his disability or handicap." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016) (quoting *G.C. v. Owensboro Pub. Schs.*, 711 F.3d 623, 635 (6th Cir. 2013)). For a Rehabilitation Act claim, the plaintiff must also demonstrate that "the program receives federal financial assistance." *Id.*

There is no dispute that Mr. Larson has adequately alleged that he has a disability because of his intestinal conditions and resulting incontinence, and that he is otherwise qualified for a service, program, or activity of Defendants (access to basic hygiene and sanitation). The only issue is whether Mr. Larson has adequately alleged that he has been denied the benefits of a service offered to all prisoners because Defendants have failed to provide him with immediate access to

19

bathroom facilities by way of a single cell.  *See Ability Ctr.*, 385 F.3d at 910 ("[T]o avoid denying the individual of the benefits of the public services at issue, the public entity must remove the impeding architectural barriers").  As explained below, the answer is plainly yes: Mr. Larson has amply pleaded that the accommodations Defendants have provided fail to provide meaningful access, and that Defendants have taken away (and refuse to give back) the only reasonable accommodation that provides him with such access:  a single-man cell.

## I. Mr. Larson plausibly alleged that Defendants' refusal to provide him with the reasonable accommodation of a single-man cell denied him meaningful access to a toilet under the ADA.

Although "Title II does not expressly define 'discrimination' to include a refusal to make a reasonable accommodation for a person with a disability (in addition to intentional discrimination)," the "Attorney General has … passed a regulation imposing that mandate."[3]  *Madej v.*

---

[3] That regulation, 28 C.F.R. § 35.130(b)(7)(i), provides that a "public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  The same section similarly provides that "[n]o qualified individual with a disability shall, on the basis of disability,

*Maiden*, 951 F.3d 364, 372 (6th Cir. 2020). Accordingly, "[t]wo types of claims are cognizable under Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021) (quoting *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017)); *see also Madej*, 951 F.3d at 372.

Because "Title II imposes affirmative obligations on public entities and does not merely require them to refrain from intentionally discriminating against the disabled," *Wilson*, 3 F.4th at 859 (quoting *Ability Ctr.*, 385 F.3d at 910), a "failure-to-accommodate claim … must show that the defendant reasonably could have accommodated [the plaintiff's] disability but refused to do so." *Knox Cnty. v. M.Q.*, --- F.4th ---, 2023 WL 2552843, at *12 (6th Cir. 2023); *Keller v. Chippewa Cnty.*, 860 F. App'x 381, 385 (6th Cir. 2021). The plaintiff must also establish that the "preferred accommodation was reasonable[] and that the accommodation provided to [the plaintiff] was unreasonable." *M.Q.*, --- F.4th ---, 2023 WL 2552843, at *12. In these failure-to-accommodate cases, the plaintiff need not "make the animus showing required to

---

be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." *Id.* § 35.130(a).

support a claim of intentional discrimination via disparate treatment," *Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *6 (6th Cir. Aug. 3, 2022), because the "refusal to provide a reasonable accommodation can serve as direct evidence of disability discrimination," *Keller*, 860 F. App'x at 385; *see also M.Q.*, --- F.4th ---, 2023 WL 2552843, at *13 (explaining that "the ADA unequivocally *does not* limit its protection to instances of intentional discrimination, but instead extends to cases involving decision making that unintentionally results in exclusion as well," (emphasis in original), and noting that "[i]t was … [the plaintiff's] responsibility to demonstrate how [the public entity] intentionally discriminated *or* failed to reasonably accommodate him," (emphasis added)).

Mr. Larson has plausibly alleged that "(1) he is disabled; (2) he was 'qualified' to take part in the 'services, programs, or activities' of the public entity; (3) he was 'excluded from participation in' or 'denied the benefits of' such 'services, programs, or activities'; and (4) this exclusion or denial occurred 'by reason of' his disability." *Keller*, 860 F. App'x at 385-86 (quoting 42 U.S.C. § 12132).

### A.    Mr. Larson has a disability because the complications from surgery have substantially limited the functioning of his excretory system.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual," 42 U.S.C. § 12102(1)(A), "as compared to most people in the general population," 28 C.F.R. § 35.108(d)(1)(v); *see also* 28 C.F.R. § 35.108(d)(1)(i) ("'Substantially limits' is not meant to be a demanding standard."). These major life activities "include[] the operation of a major bodily function, including but not limited to, … digestive, bowel, [and] bladder … functions." 42 U.S.C. § 12102(2)(B).

The "irreparable" narrowing and shortening of Mr. Larson's intestines have caused Mr. Larson to suffer from "12, 15, or 20 plus[] daily bowel movements, uncontrollable flatulence, … blood, soreness, leakage and strenuous [bowel movements]," and incontinence. RE 26, PageID 250-51. Unlike most people in the general population, Mr. Larson is also "incapable of controlling [his] excretory functions (inconitence [sic])," and it is "all but impossible to hold back [bowel movements] the majority of the time." RE 26, PageID 251. Under the ADA, Mr. Larson plainly has a substantially limiting disability, a point even the prison's ADA

committee has recognized.  RE 26, PageID 256 (ADA committee denying single-man cell accommodation but allowing Mr. Larson to have access to the restroom designated for disabled prisoners).

### B.    Mr. Larson is otherwise qualified to take part in the prison's services, programs, or activities.

Prisoners with a disability are qualified to participate in prison services, programs, or activities if they, "with or without reasonable modifications to rules, policies, or practices, … meet[] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by" the prison.  42 U.S.C. § 12131(2).  The "phrase 'services, programs, or activities' encompasses virtually everything that a public entity does," *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998), including "recreational, medical, educational, and vocational prison programs," *United States v. Georgia*, 546 U.S. 151, 157 (2006) (citing *Yeskey*, 524 U.S. at 210).

Access to "bathroom facilities" is part of the "services, programs, or activities" provided by a correctional institution to the prisoners housed therein.  *Keller*, 860 F. App'x at 386; *Shaw v. Kemper*, 52 F.4th 331, 334-35 (7th Cir. 2022) (having "no difficulty concluding," in Title II claim brought by wheelchair-using prisoner for failure to provide a

handicapped toilet, that "a handicapped-accessible toilet for disabled prisoners amounts to a service"); *Starr v. Bland*, No. 21-2476, 2022 WL 711304, at *1 (8th Cir. Mar. 10, 2022) (recognizing Title II claim for deprivation of access to "toilet and shower facilities"); *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 290 (3d Cir. 2019) (concluding that "the provision of a shower is a service, program, or activity" in part because "prisons must address the needs of inmates with disabilities by providing 'accessible toilet and shower facilities'" (quoting 28 C.F.R. pt. 35, App. A)); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010) (noting that "the fundamentals of life" include "the use of toilet and bathing facilities"). And as Defendants conceded before the district court, there is no question that Mr. Larson is "qualified" to access a toilet. RE 9, PageID 156 (conceding for "purpose of [its] Motion only" that Mr. Larson "has a disability and … is otherwise qualified"). The only remaining issues are whether Mr. Larson adequately alleged that he was deprived of meaningful access to that service and that the requested accommodation of a single-man cell was a reasonable one.

**C.   Defendants' revocation of and refusal to reinstate Mr. Larson's single-man cell accommodation has denied Mr. Larson meaningful access to a toilet by reason of his disability.**

Prisoners with a disability are excluded from the prison's services, programs, or activities when they are "deni[ed] … meaningful access" to them.  *See Keller*, 860 F. App'x at 386.  The fact that a plaintiff *can* access or participate in a service, program, or activity—with hardship—does not mean the access the plaintiff has is *meaningful.   Id.* at 387 (explaining that "the simple fact" that a prisoner with a prosthetic leg was able to "use the toilet" after having a "'hard time' getting [there]" does not "necessarily mean that he had meaningful access").   Put differently, "providing meaningful access requires just that—granting inmates *meaningful* participation in prison activities and programs." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 73 (2d Cir. 2016) (emphasis in original); *see Tennessee v. Lane*, 541 U.S. 509, 513-14, 534 (2004) (affirming the denial of a motion to dismiss a Title II action where a paraplegic man was required to attend a hearing in a courthouse without an elevator and did so initially by "crawl[ing] up two flights of stairs" but, at a later hearing, "refused to crawl … or to be carried by officers to the courtroom"); *see also Lane*, 541 U.S. at 531 ("Recognizing that failure to

accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility.").

1.     This "meaningful access" requirement extends to prisoners' access to a toilet—the failure of prison officials "to accommodate … disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" can "constitute[] exclusion from participation in or denial of the benefits of the prison's services, programs, or activities." *See Georgia*, 546 U.S. at 157 (quoting 42 U.S.C. § 12132) (internal quotation marks and alterations omitted). It is not enough to simply point to the fact that a disabled prisoner can access the same toilets and other bathroom facilities offered to everyone else—just with more hardship.   A "plaintiff who succeeds in using a prison restroom only through an excessive or painful effort may have a valid ADA claim" if the plaintiff did not have "meaningful access." *Keller*, 860 F. App'x at 387.

General access to a toilet is particularly inadequate here, where Mr. Larson has alleged that he needs *immediate* access to a toilet as soon as

the need to use the facilities arises.  Most members of the general prison population can wait until a toilet becomes available.  Not so for Mr. Larson:  his shortened and narrowed intestines have rendered him incontinent and incapable of "hold[ing] back" his frequent bowel movements "the majority of the time."   RE 26, PageID 250-51. Accordingly, for Mr. Larson, the only "meaningful access" to a toilet is "immediate access." Mr. Larson has adequately alleged that prison officials at his correctional facility have not accommodated his need for "immediate access" to bathroom facilities.  Actually, prison officials *did* accommodate Mr. Larson—for more than ten years, they provided him with a single-man cell that would give Mr. Larson immediate and uninterrupted access to a toilet during his uncontrollable bowel movements.  RE 26, PageID 250-52.  But they took that accommodation away and repeatedly refused to give it back, thereby depriving him of meaningful access once again.  RE 26, PageID 253-54, 259.

And there are other allegations that amply establish that Mr. Larson is deprived of meaningful access to basic hygiene and sanitation without a single-man cell.  For example, Mr. Larson alleges that his doctors ordered that he have a private restroom as early as February

2008.  RE 26, PageID 249.  And from November 2008 to October 2018,[4] prison officials recognized that Mr. Larson needed his own bathroom because of his disability and respected his single-man cell accommodation.  RE 26, PageID 250, 252-53.

2.    Mr. Larson has also plausibly alleged why the other accommodations provided to him are not reasonable ones that provide him with meaningful access.

First, the amended complaint explains that access to the restroom designated for disabled prisoners does not provide "meaningful" access (and is therefore not a reasonable accommodation) because access to that restroom is not available when Mr. Larson needs it.  RE 26, PageID 263. The amended complaint alleges that the restroom is effectively a "community restroom" (because it is left unlocked), with access provided to all comers, and at times even serves as a dishwashing station.  RE 26, PageID 263, 265-66.  Indeed, the "community" nature of the disabled toilet is so well-established in Mr. Larson's unit that both the unit

---

[4] Although Mr. Larson did not have a cellmate until February 2019, RE 26, PageID 260, the prison's health care administrator announced that his single-man cell accommodation was being revoked in October 2018, RE 26, PageID 253.

manager and prison inmates posted signs in the restroom asking people to clean up after their bowls and dishes so that they do not "lose the [privilege] of using this restroom."  RE 26, PageID 265-66.

Moreover, even when inmates without disabilities are not using the restroom designated for disabled prisoners to wash their dishes, take a shower, or use the toilet, the inmates with disabilities who are also authorized to use the restroom "keep the handicapped [bathroom] in use for hours on end, sometimes one after the other."  RE 26, PageID 263. And when the specially designated restroom is unoccupied (and is properly locked), it still "is not readily available for use" because Mr. Larson must wait for up to twenty minutes for an officer to unlock it— twenty minutes that Mr. Larson does not have during bowel movements that he cannot "hold back … the majority of the time."  RE 26, PageID 251, 263.  Exacerbating this lack of availability is that, even when the restroom is both unoccupied and unlocked, Mr. Larson is not permitted to use or access it when he is locked in his cell or at night, which is when many of his "flare ups" occur.  RE 26, PageID 251, 263.

The other accommodation—the toilet in Mr. Larson's cell—is also not an adequate and reasonable accommodation that provides

meaningful access.   Because Mr. Larson shares his cell with another person—a person who also needs to use the restroom throughout the day—Mr. Larson cannot rely on immediate access to their shared toilet. To "deal with" his cellmate's bathroom schedule, Mr. Larson has been forced to "miss[] meals and eat[] certain amounts."  RE 26, PageID 252. And given the nature of his disability—which involves between twelve to twenty or more bowel movements per day, incontinence, "uncontrollable flatulence," "blood," "leakage," and diarrhea, among other symptoms, RE 26, PageID 250-51—Mr. Larson has had "problems with cellmates over using the toilet."  RE 26, PageID 249 (2008 pre-accommodation conflicts); RE 26, PageID 260 ("This living arrangement poses possible harm on a daily basis and especially with each new unknown cellmate[.]"); RE 26, PageID 262 (explaining that "placing another inmate in a cell with plaintiff places them in a situation because plaintiff has no control over his bowel … [and] uncontrollable flatulence"); RE 26, PageID 262 (describing how "previously plaintiff had problems with cellmates over the availability of the toilet").   Indeed, after Defendants revoked his single-man cell accommodation, Mr. Larson had fourteen different cellmates over the course of approximately one-and-a-half years.  RE 26,

31

PageID 263.  This rapid turnover continued when Mr. Larson was moved to a different unit in November 2021 where he had seven different cellmates in approximately nine months.   RE 26, PageID 265.   An accommodation that puts Mr. Larson at loggerheads with his cellmates due to his constant use of the toilet, and that compels Mr. Larson to skip meals to try and minimize cellmate discomfort, is not a "reasonable" or meaningful one.

By "stating that public entities shall not deny qualified disabled individuals the benefits of public services," the ADA "necessarily requires that public entities provide such individuals the means necessary to acquire access to these services." *Ability Ctr.*, 385 F.3d at 910. Defendants have failed to provide Mr. Larson with these means. Construing Mr. Larson's complaint "liberally," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), Mr. Larson has more than adequately alleged that he frequently does not have immediate access to either his cell's toilet or the restroom designated for disabled prisoners when he needs to relieve himself during uncontrollable bowel movements—in other words, that Defendants have denied him meaningful access to a

toilet and that the accommodations Defendants have provided are not adequate ones.

3.    The critical flaw in the district court's opinion is that it looked for "actual" access, instead of "meaningful" access.  When analyzing Mr. Larson's amended complaint, the court concluded that Mr. Larson "has not alleged that he has been denied access to a toilet."  RE 32, PageID 325.  But that conclusion waters down the ADA and misconstrues its principal purpose—which is to provide people with disabilities with not just access, but *meaningful* access.  *See, e.g.*, *Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("[A]n otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers."); *Ability Ctr.*, 385 F.3d at 913 ("§ 202 of Title II … imposes on public entities the requirement that they provide qualified disabled individuals with meaningful access to public services ….").  Indeed, the only time the court referenced the "meaningful access" standard was when it quoted a decision from this Court in a parenthetical.  RE 32, PageID 324 (quoting *Ability Ctr.*, 385 F.3d at 907).  Everything else about the district court's opinion makes clear the court applied an "actual access" standard, which is not the law.  And, as discussed above, Mr.

33

Larson's disability means that the only "meaningful access" to a toilet is "immediate access."

The district court compounded this error by failing to construe Mr. Larson's pro se complaint liberally—and, in some instances, apparently failing to review the complaint at all. For example, the district court concluded that Mr. Larson did not allege that he is incontinent. RE 32, PageID 325. But as the court previously acknowledged, Mr. Larson alleged that he suffers from "uncontrollable bowel movements," RE 6, PageID 108-09. The amended complaint also alleges that: (1) Mr. Larson is "incapable of controlling excretory functions (inconitence [sic])," RE 26, PageID 251; (2) it is "all but impossible [for him] to hold back [bowel movements] the majority of the time," *id.*; (3) Mr. Larson suffers from "incontinence," "stool leakage," and "not being able to hold [bowel movements] back when the need to defecate hits him the majority of the time," RE 26, PageID 261; (4) a nurse gave him diapers so that he "did not have to continue wearing or washing his soiled underwear," RE 26, PageID 260; and (5) he has "no control over his bowel[s]," RE 26, PageID 262. Mr. Larson more than adequately alleged his incontinence, and the reasons why he needs immediate access to a toilet.

The district court also incorrectly determined that Mr. Larson did "not allege that the toilet in his cell has ever been unavailable to him when needed" or that "he is unable to use the toilet in his cell when the handicapped restroom is unavailable." RE 32, PageID 325. A common-sense reading of the amended complaint, applying the liberal rules of construction afforded to pro se pleadings, would find a plausible inference that Mr. Larson only went to the disabled bathroom because the toilet in his cell was unavailable, either because his cellmate was using it, or because his cellmate did not want Mr. Larson to use it. *See* RE 26, PageID 262 (noting that "there is much more to having a cellmate and plaintiff being able to use the cell toilet when his cellmate is not"); RE 36, PageID 341 (Mr. Larson asking in his motion to reconsider, "Why would plaintiff attempt or actually use the handicapped restroom if his cell toilet is vacant?"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Mr. Larson was not required (or even expected) to utter magic words of hyper-specificity to plausibly

state a claim, especially as a pro se litigant.  *See Williams*, 631 F.3d at 384 & n.2.

The court likewise contended that Mr. Larson only alleged that sharing a cell "could hypothetically lead to conflicts with his cellmate." RE 32, PageID 325.  But such conflicts can plainly be inferred from Mr. Larson's allegations.  Mr. Larson pleads that, since Defendants revoked his single-man cell accommodation, he has been assigned a different cellmate approximately every five to six weeks.  *See* RE 26, PageID 263 (fourteen different cellmates from February 27, 2019 until August 16, 2020), 265 (seven different cellmates from November 15, 2021 to the date of the amended complaint, August 15, 2022).  Under the liberal construction afforded to pro se pleadings and common sense, Mr. Larson has alleged that his disability has led to conflicts with his cellmates.  As Mr. Larson himself put it, "[n]o one wants to live with plaintiff and he cannot blame them."  RE 36, PageID 342 (motion to reconsider).

### D.    Mr. Larson's proposed accommodation is objectively reasonable.

Mr. Larson has not only alleged that Defendants have denied him meaningful access to a toilet, but also that the accommodation he seeks— a single-man cell—is objectively reasonable.  Under the ADA, public

entities "shall make reasonable modifications …, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."   28 C.F.R. § 35.130(b)(7)(i).   Whether an accommodation is reasonable is a fact-specific inquiry that is determined on a case-by-case basis.  *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001) (explaining in Title III context that "an individualized inquiry must be made to determine whether a specific modification … would be reasonable under the circumstances"); *Marble v. Tennessee*, 767 F. App'x 647, 652 (6th Cir. 2019) ("Although *PGA Tour* is a Title III case, the Supreme Court's reasoning makes clear that the individualized inquiry requirement also applies to requests for accommodation under Title II.").   Because the reasonableness of an accommodation (and whether it would create a fundamental alteration) is a fact-intensive inquiry, a fundamental-alteration defense typically does not provide grounds for dismissal at the pleadings stage.  *E.g.*, *Hindel v. Husted*, 875 F.3d 344, 348-49 (6th Cir. 2017).

Here, Mr. Larson has adequately alleged that a single-man cell accommodation is reasonable and feasible, given that he was provided

37

the accommodation for more than ten years.  RE 26, PageID 252.  And the amended complaint makes clear that a single-man cell would provide Mr. Larson with the immediate access to a toilet that he needs for his incontinence, RE 26, PageID 251-52, 260-62, and would allow him to avoid the problems caused by his other accommodations, *e.g.*, the potential for conflict with his cellmates caused by sharing a toilet and having to compete with all other inmates in his unit for access to the restroom designated for disabled prisoners.  *See supra* Section I.C.  As Mr. Larson alleges, a single-man cell is not just reasonable but also an accommodation Defendants are supposed to provide for "individuals with severe medical disabilities" under the state's correctional policies.  Ohio Dep't of Rehab. & Corr., Policy No. 55-SPC-01 (Apr. 1, 2021), bit.ly/3TcaOet; RE 26, PageID 252, 263 (referring to Policy 55-SPC-01). Even the State of Ohio recognizes that a single-man cell can be a reasonable accommodation.

All told, Mr. Larson has alleged that the accommodations given to him are inadequate, and that he has been denied the only accommodation that can give him meaningful access to a toilet:  a single-man cell. Defendants may quibble with whether such an accommodation is

reasonable in light of present conditions, but they cannot do so on the basis of Mr. Larson's amended complaint—challenging the reasonableness of a proposed accommodation is a fact-bound defense "not capable of resolution on the basis of the pleadings alone." *Hindel*, 875 F.3d at 347; *see also Anderson*, 798 F.3d at 356. Mr. Larson should be given the opportunity to prove his claims. The district court's decision should accordingly be reversed.

*    *    *

The district court concluded twice that Mr. Larson plausibly alleged that Defendants failed to provide him with a reasonable accommodation. RE 19, PageID 206; RE 6, PageID 110. In a remarkable turnaround, the court used the exact same facts in Mr. Larson's amended complaint to reach the exact opposite conclusion. The court was right the first two times. Mr. Larson plausibly alleged that Defendants denied him meaningful access to a toilet. This Court should reverse the district court's contrary decision and allow Mr. Larson to proceed with his Title II claim.

## II.    The analysis applicable to Mr. Larson's ADA claim likewise applies to his claim under the Rehabilitation Act.

Like Title II of the ADA, the Rehabilitation Act also provides that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Because the Rehabilitation Act "mirrors 42 U.S.C. § 12132" of the ADA and "is interpreted in parallel with it," Mr. Larson's "ADA and § 504 [Rehabilitation Act] claims are 'essentially one claim,'" and this Court "thus consider[s] them in tandem."  *Waskul*, 979 F.3d at 459-60 (quoting *Carpenter-Baker v. Ohio Dep't of Medicaid*, 752 F. App'x 215, 220 (6th Cir. 2018)); *Ability Ctr.*, 385 F.3d at 908 ("[T]he analysis of claims under the ADA roughly parallels those brought under the Rehabilitation Act." (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996) (internal alteration omitted)).  As this Court has recognized, "[w]hat the Rehabilitation Act ultimately requires … [is] that otherwise qualified disabled individuals 'be provided with meaningful access to the benefit that the grantee offers.'"  *Ability Ctr.*, 385 F.3d at 909 (quoting *Alexander*, 469 U.S. at 301).  The only

substantive difference between the Rehabilitation Act and Title II of the ADA is the Rehabilitation Act's additional requirement that the public entity "receiv[e] Federal financial assistance."  29 U.S.C. § 794(a).

Ohio's Department of Rehabilitation and Corrections receives federal funding.  *See Cutter v. Wilkinson*, 544 U.S. 709, 716 n.4 (2005) ("Every State, including Ohio, accepts federal funding for its prisons."); *Cutter v. Wilkinson*, 423 F.3d 579, 583 (6th Cir. 2005) ("[T]he Ohio Department of Rehabilitation and Correction (ODRC) has consistently received federal funding."); Ohio Checkbook, *Expenses by Agency*, https:// checkbook.ohio.gov/State/Expenses/Agency.aspx, last accessed March 29, 2023 (interactive search showing that the Department of Rehabilitation and Corrections received over $2 million in federal grants in fiscal year 2023 year-to-date); RE 9, PageID 153-59 (motion to dismiss initial complaint not contesting federal funding).  Mr. Larson's arguments in support of his ADA claim, *supra* Section I, thus apply with equal force to his claim under the Rehabilitation Act.  For the reasons explained above, Mr. Larson has stated a claim for relief under the Rehabilitation Act,[5]

---

[5] Because Mr. Larson seeks declaratory and "prospective injunctive relief, [his] claims against [Defendants] in [their] official capacit[ies] are

and Defendants' revocation of Mr. Larson's single-man cell accommodation has denied him meaningful access to a toilet. The district court's decision must be reversed.

*    *    *

Mr. Larson's suffering has no end in sight. All he asks for is meaningful access to a toilet. Because his amended complaint plausibly alleges that Defendants failed to provide him with a reasonable accommodation under Title II of the ADA and the Rehabilitation Act, it should not have been dismissed.

---

permitted under *Ex parte Young*." *Waskul*, 979 F.3d at 443; *Carten v. Kent State Univ.*, 282 F.3d 391, 396-98 (6th Cir. 2002). Likewise, his "request for attorneys' fees is also permitted." *Waskul*, 979 F.3d at 443 n.4.

# CONCLUSION

The district court's judgment should be reversed.


March 29, 2023                           Respectfully submitted.


                                         /s/ *Rohiniyurie Tashima**

Oren N. Nimni                            Rohiniyurie Tashima*
Samuel Weiss                             Andrew Kim
RIGHTS BEHIND BARS                       Jaime A. Santos
416 Florida Avenue, N.W.                 GOODWIN PROCTER LLP
Unit 26152                               1900 N Street, N.W.
Washington, DC 20001                     Washington, DC 20036
                                         (202) 346-4000


                                         *Admitted only in New York and Virginia;
                                         not admitted in the District of Columbia.
                                         Practicing under the supervision of counsel
                                         admitted in the District of Columbia.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 8,488 words, excluding the parts exempted by Rule 32(f), according to the count of Microsoft Word.

/s/ *Rohiniyurie Tashima*\*
Rohiniyurie Tashima\*

## CERTIFICATE OF SERVICE

I, Rohiniyurie Tashima, hereby certify that on March 29, 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Rohiniyurie Tashima*\*
Rohiniyurie Tashima\*

# ADDENDUM

## PLAINTIFF-APPELLANT'S DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to 6 Cir. R. 28(a), Plaintiff-Appellant Terry Larson hereby

designates the following relevant district court documents:

## DISTRICT COURT DOCUMENTS

| Record Entry | Description | Page ID Number Range |
|---|---|---|
| 1 | Complaint (Sept. 23, 2020) | 1-38 |
| 4 | Magistrate Judge's Report and Recommendation (Nov. 2, 2020) | 72-84 |
| 5 | Mr. Larson's Objections to the Report and Recommendation (Nov. 16, 2020) | 85-94 |
| 6 | District Court's Opinion and Order (June 29, 2021) | 96-113 |
| 9 | Defendants and Ohio's Motion to Dismiss (Sept. 10, 2021) | 151-60 |
| 19 | District Court's Opinion and Order (July 21, 2022) | 200-06 |
| 26 | Amended Complaint (postmarked Aug. 11, 2022) | 245-83 |
| 32 | District Court's Opinion and Order (Oct. 20, 2022) | 318-26 |
| 36 | Mr. Larson's Motion to Reconsider (Nov. 3, 2022) | 339-44 |
| 37 | District Court's Opinion and Order (Nov. 8, 2022) | 346-48 |
| 38 | Notice of Appeal (Dec. 6, 2022) | 349-50 |